

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:23-cr-058 |
| | ) | |
| | ) | 18 U.S.C. § 1343 |
| v. | ) | Wire Fraud |
| | ) | (Counts 1-6) |
| | ) | |
| JUSTIN LEE GODSEY, | ) | 18 U.S.C. § 1956(a)(1)(A)(i) |
| | ) | Promotional Money Laundering |
| Defendant. | ) | (Counts 7 & 8) |
| | ) | |
| | ) | 18 U.S.C. § 1957 |
| | ) | Monetary Transaction with Property Derived |
| | ) | from Specified Unlawful Activity |
| | ) | (Counts 9-11) |
| | ) | |
| | ) | 18 U.S.C. §§ 981 & 982 |
| | ) | Forfeiture Allegation |

### INDICTMENT

May 2023 Term—at Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1. Defendant JUSTIN LEE GODSEY resided in Hanover County and Henrico County, Virginia at various times.

2. Beginning on or before August 3, 2020 and continuing through at least July 20, 2021, GODSEY engaged in the business of selling athletic shoes and other products through various business entities, including Bullion Holdings, LLC, Sneak Foot, Ltd., and Sneak Foot Co. (collectively, "Sneak Foot"). Although GODSEY had another individual ("Individual 1") act as an officer in Bullion Holdings, LLC, Sneak Foot, Ltd., and Sneak Foot Co., Individual 1

played no role in the running of those businesses. GODSEY personally dealt with customers and other business entities on behalf of those businesses.

3. GODSEY purchased athletic shoes and other items through E-Commerce Business 1, which ran a website on which sellers could place items (primarily athletic shoes) for buyers to bid on or purchase at a listed price. GODSEY then resold the shoes he had purchased utilizing the website **www.sneakfoot.com**, as well as various social media platforms.

4. Sneak Foot customers ordered athletic shoes and other items from Sneak Foot on-line via the websites noted previously, which Sneak Foot operated through E-Commerce Business 2. Sneak Foot represented that it would ship the product to the customer via United States mail or private commercial interstate carrier. On some occasions, GODSEY had E-Commerce Business 1 ship product to his home. Later he had E-commerce Business 1 "drop ship" shoes directly to customers. E-Commerce Business 2 also provided shipping services for Sneak Foot on occasion.

5. Sneak Foot entered into agreements with Payment Processing Companies (PPC) 1 and 2 under which those companies collected payments from Sneak Foot customers when the customers ordered shoes and other items product from Sneak Foot. Although Individual 1 signed agreements with PPCs 1 and 2 as Chief Executive Officer of Bullion Holdings, Individual 1 played no further role in the business relationship between Bullion Holdings and PPCs 1 and 2. GODSEY personally dealt with PPCs 1 and 2 on behalf of Bullion Holdings.

6. PPCs 1 and 2 forwarded funds collected from Sneak Foot customers to Bullion Holdings account number -0164 with Branch Banking and Trust Co. (BB&T)/Truist Bank as

Automated Clearing House (ACH) payments. BB&T changed its name to Truist on December 7, 2019, but continued to use the name BB&T on official documents and bank statements.

7. If Sneak Foot failed to ship the ordered product to its customers, PPCs 1 and 2 were obligated to issue refunds, commonly known as "chargebacks," to the customers. Sneak Foot was then obligated to reimburse PPCs 1 and 2 for the chargebacks.

## COUNTS ONE THROUGH SIX
(Wire Fraud)

8. Paragraphs one through seven are re-alleged and incorporated by reference as if fully set forth here.

9. Beginning before at least September 3, 2020 and continuing through at least July 20, 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant JUSTIN LEE GODSEY knowingly, unlawfully, and with intent to defraud, executed and attempted to execute a scheme and artifice to defraud PPCs 1 and 2, and to obtain money, funds, and property belonging to PPCs 1 and 2, by means of materially false and fraudulent pretenses and promises.

### Purpose of the Scheme and Artifice to Defraud

10. The purpose of the scheme and artifice to defraud was for GODSEY to unlawfully enrich himself by collecting payments for athletic shoes and other items from customers via PPCs 1 and 2, failing to deliver the shoes and other items ordered, and illegally retaining the funds PPCs 1 and 2 paid to him for those purchases.

## Manner and Means of the Scheme and Artifice to Defraud

11. The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

    a. GODSEY advertised athletic shoes for sale by Sneak Foot on the Internet through the websites referenced previously and on social media.

    b. With limited exceptions, when GODSEY claimed to have the athletic shoes for sale, he did not possess the shoes, nor did he make any effort at purchasing them from E-Commerce Business 1 or elsewhere before or after receiving funds from customers via PPCs 1 and 2.

    c. With limited exceptions, GODSEY used the funds received from PPCs 1 and 2 for personal expenditures and made no attempt to obtain the shoes to satisfy his customers' purchase orders.

    d. Upon receiving the funds from customers via PPCs 1 and 2, GODSEY consistently failed to send them the shoes they ordered. PPCs 1 and 2 were then obligated to refund the customers' payments.

    e. GODSEY retained the funds PPCs 1 and 2 paid to him and did not return those funds to PPCs 1 and 2.

    f. In or around May 2021, PPC 1 had retained an attorney ("Law Firm A") to collect chargeback funds PPC 1 was forced to pay to GODSEY's customers because of GODSEY's failure to provide shoes to those customers. GODSEY used funds fraudulently obtained from PPC 2 to make payments on his debt to PPC 1, and sent those funds to the attorney representing PPC 1 in its collection efforts.

  g. PPC 1 paid 850 chargebacks totaling approximately $196,844 to GODSEY's customers.

  h. PPC 2 paid 2,710 chargebacks totaling approximately $677,636 to GODSEY's customers.

  i. With the exception noted in sub-paragraph 11(f), GODSEY failed to reimburse PPCs 1 and 2 for the chargebacks.

### Execution of the Scheme and Artifice to Defraud

  12. On or about the following dates, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendant JUSTIN LEE GODSEY caused to be sent and delivered in interstate and foreign commerce via wire communication the signs, signals, and writings set forth below:

| Count | Date | Interstate Wire Communication |
|---|---|---|
| 1 | 12/10/2020 | ACH payment of $5,791.30 from bank account of PPC 1 through Federal Reserve Bank and Receiving Depository Financial Institution (RDFI) outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |
| 2 | 12/11/2020 | ACH payment of $47,669.80 from bank account of PPC 1 through Federal Reserve Bank and RDFI outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |
| 3 | 5/3/2021 | ACH payment of $47,119.48 from bank account of PPC 2 through Federal Reserve Bank and RDFI outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |

| Count | Date | Interstate Wire Communication |
|---|---|---|
| 4 | 5/10/2021 | ACH payment of $24,877.39 from bank account of PPC 2 through Federal Reserve Bank and RDFI outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |
| 5 | 5/11/2021 | ACH payment of $8,822.87 from bank account of PPC 2 through Federal Reserve Bank and RDFI outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |
| 6 | 5/11/2021 | ACH payment of $13,968.32 from bank account of PPC 2 through Federal Reserve Bank and RDFI outside the Commonwealth of Virginia to Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia |

(In violation of Title 18, United States Code, Section 1343.)

## COUNTS SEVEN AND EIGHT
(Promotional Money Laundering)

13. Paragraphs one through seven and nine though twelve are realleged and incorporated by reference as if fully set forth here.

14. On or about each of the dates set forth below, in the Eastern District of Virginia, and within the jurisdiction of this Court, as well as elsewhere, defendant JUSTIN LEE GODSEY unlawfully and knowingly conducted and attempted to conduct, and caused to be conducted, the following transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity (that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343), knowing that the transactions were designed in whole and in part to promote the carrying on of the specified unlawful activity:

6

| Count | Date | Transaction |
|---|---|---|
| 7 | 5/11/2021 | Wire transfer of $15,000 from Bullion Holdings Truist/BB&T account number -0164 in Eastern District of Virginia to bank account of Law Firm A (representing PPC 1 in collecting debt incurred by Bullion Holdings, LLC because of GODSEY's failure to provide shoes purchased by Sneak Foot customers) in Irvine, California |
| 8 | 5/17/2021 | Wire transfer of $5,200 from Bullion Holdings Truist/BB&T account number -0164 in Eastern District of Virginia to bank account of Law Firm A (representing PPC 1 in collecting debt incurred by Bullion Holdings, LLC because of GODSEY's failure to provide shoes purchased by Sneak Foot customers) in Irvine, California |

(In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).)

**COUNTS NINE THROUGH ELEVEN**
(Monetary Transaction with Property Derived from Specified Unlawful Activity)

15. Paragraphs one through seven and paragraphs nine though twelve are realleged and incorporated by reference as if fully set forth here.

16. On or about each of the dates set forth below, in the Eastern District of Virginia, and within the jurisdiction of this Court, as well as elsewhere, defendant JUSTIN LEE GODSEY unlawfully and knowingly engaged and attempted to engage in monetary transactions (as that term is defined in Title 18, United States Code, Section 1957(f)(1)) in criminally derived property of a value greater than $10,000.00, such funds having been derived from a specified unlawful activity (that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343):

| Count | Date | Transaction |
|---|---|---|
| 9 | 12/14/2020 | Wire transfer of $60,000 from Bullion Holdings Truist/BB&T account number -0164 in Eastern District of Virginia to personal Bank of America account of Justin Lee Godsey |
| 10 | 12/16/2020 | Wire transfer of $29,000 from Bullion Holdings Truist/BB&T account number -0164 in Eastern District of Virginia to personal Bank of America account of Justin Lee Godsey |
| 11 | 5/17/2021 | Wire transfer of $20,000 from Bullion Holdings Truist/BB&T account number -0164 in the Eastern District of Virginia to bank account of Car Dealership 1 in Elverson, Pennsylvania in connection with purchase of vehicle |

(In violation of Title 18, United States Code, Section 1957.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is notified that:

A.  If convicted of any of the offenses alleged in Counts One through Six, he shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds traceable to such violations;

B.  If convicted of any of the offenses alleged in Counts Seven through Eleven, he shall forfeit to the United States any property, real or personal, involved in such offenses or any property traceable to such property;

C.  Property subject to forfeiture includes, but is not limited to, a sum of money of at least **$874,480**, representing the proceeds of the offenses charged, which shall be reduced to a money judgment against the defendant in favor of the United States; and

D.  If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p).)

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

By: _____
Michael C. Moore
Assistant United States Attorney

9